IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRENDA DAVIS,

   Plaintiff,

vs.          Case No. 13-1342-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

   Defendant.

MEMORANDUM AND ORDER

  This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I. General legal standards**

  The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On May 31, 2012, administrative law judge (ALJ) Michael D. Mance issued his decision (R. at 11-21). Plaintiff alleges that she had been disabled since September 30, 2009 (R. at 11). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2014 (R. at

4

13).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since the alleged onset date (R.
at 13).  At step two, the ALJ found that plaintiff had the
following severe impairments:  Crohn's disease (R. at 13).  At
step three, the ALJ determined that plaintiff's impairments do
not meet or equal a listed impairment (R. at 15).  After
determining plaintiff's RFC (R. at 16), the ALJ determined at
step four that plaintiff is able to perform past relevant work
as a cashier checker (R. at 20).  Therefore, the ALJ concluded
that plaintiff was not disabled (R. at 20-21).

## III.  Did the ALJ err in his consideration of plaintiff's mental impairments?

In his decision, the ALJ found that plaintiff's mental
impairments are not severe (R. at 14-15), and in his RFC
findings, the ALJ failed to include any mental limitations.
Plaintiff alleges that these findings are contrary to the
medical evidence in this case.

On October 22, 2010, Dr. Adams prepared a state agency
mental RFC assessment of the plaintiff (R. at 470-486).  Dr.
Adams reviewed the record, including a mental status examination
performed by Dr. Parsons on October 19, 2010 (R. at 482, 466-
469).  Dr. Adams found that plaintiff's allegations are
supported by the medical evidence.  She noted that plaintiff is
working part-time, and that she does not accept criticism well

5

(R. at 482).  She found that plaintiff was moderately limited in 5 categories, including the ability to understand, remember and carry out detailed instructions, the ability to maintain concentration and attention for extended hours, the ability to work in coordination with or proximity to others without being distracted by them, and the ability to interact appropriately with the general public (R. at 484-485).

On May 3, 2011, Dr. Biscardi reviewed the record.  He found that plaintiff is easily distractible, with moderate restrictions with sustained concentration and attention, and some limitations around the public due to her anxiety and distractible behavior.  He affirmed the opinions of Dr. Adams (R. at 513).  On July 7, 2011, Dr. Blackman reviewed the findings of Dr. Adams.  He noted that plaintiff continued to work, and stated that her concentration was limited when the plaintiff had to stand for long periods of time.  He affirmed the opinions of Dr. Adams (R. at 524).

On October 31, 2011, Dr. Oetinger, a treatment provider, filled out a medical source statement-mental, and opined that plaintiff was moderately limited in 8 categories, and markedly limited in 1 category (the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances) (R. at 565-566).  Finally, on November 7, 2011, Dr. Wichman, a treatment provider, filled out the same

6

form, opining that plaintiff was moderately limited in 2
categories, markedly limited in 8 categories, and extremely
limited in 3 categories (R. at 568-569).

Thus, the record sets out 5 medical opinions, 2 from
treatment providers, indicating that plaintiff had at least some
moderate mental limitations.  Dr. Oetinger agreed with Drs.
Adams, Biscardi and Blackman that plaintiff was moderately
impaired in 4 categories: in her ability to understand, remember
and carry out detailed instructions, in her ability to maintain
attention and concentration for extended periods, and in her
ability to interact appropriately with the general public (R. at
484-485, 565-566).  Dr. Wichman agreed with Drs. Adams, Biscardi
and Blackman that plaintiff was <u>at least</u> moderately impaired in
4 categories: in her ability to understand, remember and carry
out detailed instructions, in her ability to maintain attention
and concentration for extended periods and in her ability to
work in coordination with or proximity to others without being
distracted by them (R. at 484-485, 568-569).[1]  All five medical
sources agree that plaintiff was <u>at least</u> moderately limited in
her ability to understand, remember and carry out detailed
instructions, and in her ability to maintain attention and
concentration for extended periods (R. at 484-485, 565-566, 568-

---

[1] Dr. Wichman found that plaintiff was markedly impaired in her ability to understand and remember detailed instructions, moderately impaired in her ability to carry out detailed instructions, extremely impaired in her ability to maintain attention and concentration for extended periods, and markedly limited in her ability to work in coordination with or proximity to others without being distracted by them (R. at 568).

569).  There is no medical opinion evidence indicating that
plaintiff does not have a severe mental impairment, or that this
impairment does not result in any limitations.

The ALJ stated the following regarding the above opinions:

> I have considered these opinions and give
> them little weight for the following
> reasons.  First, they are inconsistent with
> the claimant's own report that her symptoms
> were well controlled with her medications.
> They are also inconsistent with GAF scores
> that indicated that she had only mild
> limitations in her mental functioning.  In
> addition, they are inconsistent with the
> fact that she has consistently been
> prescribed the same medications, which
> indicates Dr. Wichman believed her symptoms
> were adequately controlled with medication.

(R. at 15).

At the hearing, the ALJ asked the following question:

> Q (by ALJ): Okay.  I think the last record I
> have from him [Dr. Wichman] is February
> 2012.  Said, feels fairly well controlled.
>
> A (by plaintiff): With the medication that I
> take, sir.

(R. at 37).[2]  However, the fact that plaintiff and Dr. Wichman
felt that her mental impairments were fairly well controlled
with medication does not mean that Dr. Wichman or plaintiff do
not believe that she has mental limitations.  Dr. Wichman and
four other medical sources opined that plaintiff had at least
some moderate mental limitations.  No medical source provided an

---

[2] The medical record  indicates defendant's "feels fairly well controlled," presumably referring to plaintiff's mental symptoms (R. at 598).

opinion that the fact that plaintiff's symptoms were fairly well controlled with medication negated the medical opinions from five medical sources that plaintiff had at least some moderate mental limitations.  See Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003)(no medical source provided an opinion that the fact that Ms. Shontos did better while taking prescribed medication negated Dr. Burn's opinion that Ms. Shontos would have difficulty with detailed instructions).

Second, the ALJ found that the five medical source opinions are inconsistent with GAF scores[3] only showing mild limitations in mental functioning.  However, standing alone, a GAF score, which can reflect social and/or occupational functioning, does not necessarily evidence whether an impairment seriously interferes with a claimant's ability to work.  See Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004). Because a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities.  See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004).  GAF scores are not considered absolute

---

[3] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

determinants of whether or not a claimant is disabled.  Heinritz
v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

In addition, there is no medical opinion evidence that the
GAF scores do not correlate with the opinions of five medical
sources.  The adjudicator is not free to substitute his own
medical opinion for that of a disability claimant's treatment
providers and other medical sources.  Hamlin v. Barnhart, 365
F.3d 1208, 1221 (10th Cir. 2004).  An ALJ is not entitled to sua
sponte render a medical judgment without some type of support
for his determination.  The ALJ's duty is to weigh conflicting
evidence and make disability determinations; he is not in a
position to render a medical judgment.  Bolan v. Barnhart, 212
F. Supp.2d 1248, 1262 (D. Kan. 2002).  In the absence of any
medical opinion or other evidence indicating that the GAF scores
are inconsistent with the opinions of five medical sources, the
ALJ overstepped his bounds into the province of medicine.
Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996); Price v.
Colvin, Case No. 13-1055-SAC (D. Kan. March 26, 2014, Doc. 25 at
16-18).

Finally, the court discounted the five medical source
opinions because they are inconsistent with the fact that
plaintiff has consistently been prescribed the same medications,
which indicates that Dr. Wichman believed her symptoms were
adequately controlled with medication.  However, there is no

medical source opinion stating that the fact that plaintiff has been prescribed the same medications demonstrates that plaintiff does not have at least some moderate mental limitations.  As noted above, the fact that plaintiff's symptoms may have been adequately controlled with medication does not negate the opinions of Dr. Wichman or four other medical sources that plaintiff has at least some moderate mental limitations.

The problem in this case is that the ALJ rejected all five medical source opinions in finding that plaintiff had no severe mental impairment, and no mental limitations in her ability to work.  The ALJ does not cite to any medical opinion in support of these findings.  However, an exact correspondence between a medical opinion and the RFC is not required.  In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file.  That said, in cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance.  Wells v. Colvin, 727 F.3d 1061, 1071-1072 (10th Cir. 2013) (in Wells, the ALJ rejected 3 medical opinions, finding that they were inconsistent with the other evidence in the file; the court directed the ALJ, on

remand, to carefully reconsider whether to adopt the
restrictions on plaintiff's RFC detailed in the medical
opinions, or determine whether further medical evidence is
needed on this issue).

The ALJ also relied on the fact that plaintiff works part-
time to discount the opinions regarding mental limitations (R.
at 15).  However, Dr. Adams, Dr. Biscardi and Dr. Blackman all
noted the fact that plaintiff worked part-time (R. at 482, 513,
524), but still opined that plaintiff had moderate limitations
in 5 categories.  Plaintiff testified that her mental
impairments have not kept her from working (R. at 51), but she
is only working 16 hours a week (R. at 35).  A part-time job
does not necessarily demonstrate plaintiff's ability to sustain
the mental demands of full-time work.  Wells, 727 F.3d at 1070.
Furthermore, there is no evidence in the record that the fact
that five medical sources found that plaintiff has at least some
moderate mental limitations is inconsistent with plaintiff's
ability to work 16 hours a week.

In the case before the court, the ALJ rejected the opinions
of five medical sources indicating that plaintiff has at least
some moderate mental limitations, and does not cite to any
medical evidence that plaintiff does not have a severe mental
impairment or does not have any mental limitations.
Furthermore, the ALJ provided invalid reasons for discounting

12

the opinions of the five medical sources.  For these reasons,
the court finds that substantial evidence does not support the
ALJ's finding that plaintiff does not have a severe mental
impairment, and substantial evidence does not support the ALJ's
failure to include any mental limitations in the RFC findings.
This case shall therefore be remanded in order for the ALJ to
reevaluate the medical evidence regarding plaintiff's mental
impairments and limitations, and make new step two findings and
new RFC findings.  The ALJ should carefully reconsider whether
to adopt some or all of the restrictions set forth in the
medical opinion evidence, or whether further medical evidence is
needed on this issue.  See Wells, 727 F.3d at 1072.

**IV.  Did the ALJ err in his consideration of the opinions of Dr.
Knopp?**

Dr. Knopp, plaintiff's treating physician, opined on June
8, 2010, that plaintiff could not work when she had flare-ups of
her Crohn's disease, and that these flare-ups would occur 1-2
times a month for 1-2 days per episode (R. at 343-344).  The ALJ
discounted his opinions, stating that this opinion was
inconsistent with the fact that she reported that she had not
had any significant flare-ups in recent years, with the fact
that she only sought a moderate amount of treatment, and with
the fact that the treatment has been conservative in nature (R.
at 20).  The ALJ also noted that plaintiff has missed some work,

but stated that her ability to work shows she is not as limited as she is now alleging (R. at 19).

The court will not address this issue in detail because the case is being remanded for other reasons.  However, the ALJ discounted the medical opinion because plaintiff only sought a "moderate" amount of treatment, and the treatment has been "conservative" in nature.  However, there is no evidence in the record that plaintiff should have sought more treatment, or that more treatment would have been warranted if her condition was as severe as indicated by Dr. Knopp.  Furthermore, there is no evidence in the record that the treatment received was conservative in nature, and that the treatment received demonstrates that she was not significantly limited by Crohn's disease.

An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculations, or lay opinions.  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers and other medical sources.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting

evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002). In the absence of any medical opinion or other evidence indicating the amount or nature of the treatment indicates that she is not as significantly limited as asserted by Dr. Knopp, the ALJ overstepped his bounds into the province of medicine. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).

The parties also discuss plaintiff's attendance record at Wal-Mart. Plaintiff testified that she missed or left early 9-10 days a month (R. at 45). Plaintiff's employment records indicate that from February 2011 through February 2012 she had 6 absences, 9 tardies and 23 times when she left early (R. at 329). The vocational expert testified that a person with this attendance record would not be tolerated for purposes of competitive employment (R. at 55). On remand, the ALJ should reevaluate plaintiff's attendance record and the testimony of the VE when evaluating the opinions of Dr. Knopp about the impact of Crohn's disease on plaintiff's ability to work.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 17th day of September 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge